UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAULA KIELY, :

    Plaintiff, :

    vs. : No. 3:10cv1079(MRK)(WIG)

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
                                                          :

    Defendant.
-----------------------------------------------X

## RECOMMENDED RULING ON PENDING MOTIONS

Pursuant to 42 U.S.C. § 405(g), Plaintiff has filed this appeal of the adverse decision of the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and supplemental security income. In her applications, filed June 26, 2008, Plaintiff alleged that she had been disabled since December 8, 2007. Her applications were denied initially and upon reconsideration. After a hearing before an administrative law judge ("ALJ"), the ALJ issued an unfavorable decision, finding that, given Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there were jobs that exist in significant numbers in the national economy that Plaintiff could perform (R. 22-23). Therefore, she determined that she had not been under a disability, as that term is defined by the Social Security Act, from December 8, 2007, through the date of his decision, March 25, 2010 (R. 23).

The Decision Review Board ("DRB") selected the ALJ's decision for review. Upon review, it adopted the ALJ's conclusion that Plaintiff was not disabled before March 24, 2010, but it issued corrective findings for the subsequent period. The DRB held that for the period

1

beginning March 24, 2010, when Plaintiff's age category changed, the "Grids," Rule 202.40, Table No. 2 of 20 C.F.R. Part 404, Subpart P, Appendix 2, dictated a finding that she was disabled, without consideration of her additional nonexertional limitations (R. 9). Accordingly, the DRB found that Plaintiff had been disabled since March 24, 2010, but not before that date. The DRB's decision then became the final decision of the Commissioner, subject to judicial review under 42 U.S.C. § 405(g).

In her appeal, Plaintiff challenges the DRB's decision only insofar as it relates to the period December 8, 2007, to March 24, 2010.[1] She raises eleven grounds for a reversal and/or remand in her Motion for Judgment [Doc. # 17]. Defendant has responded with a Motion to Affirm [Doc. # 25]. Because the Court finds one issue raised by Plaintiff to be dispositive and warranting a reversal and remand, the Court need not address the remaining ten issues.

## Standard of Review

In ruling on the pending motions, this Court must first determine whether the correct legal standards were applied by the ALJ and then determine whether substantial evidence in the record supports the decision of the ALJ. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."); see Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "A district court reviewing a final [Social Security Administration] decision pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). It is not this Court's

---

[1] Because the DRB adopted the ALJ's findings with respect to the period in question, the Court will refer to the ALJ's decision, although it is actually the DRB's decision that is being appealed.

2

function to determine de novo whether the claimant was disabled nor to substitute its opinion for that of the Commissioner. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must consider the entire record, examining the evidence from both sides. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence means "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be that evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. Id.; Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted).

## Discussion

In reaching her decision that Plaintiff was not under a disability, the ALJ properly applied the five-step evaluation process dictated by the regulations. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, she determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, December 8, 2007. At step two, she found that Plaintiff had the following severe impairments: irritable bowel syndrome, diverticulosis, chronic abdominal pain and diarrhea, asthma, depression, and a Baker's cyst on the left knee. At step three, she held that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). At step four, she determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that she could only occasionally bend, climb stairs, stoop, kneel, crouch and crawl; she should not be exposed to extreme cold or

humidity; and she was limited to performing simple, routine, repetitive tasks, involving short, simple instructions in a low stress environment with few workplace changes, limited contact with supervisors and co-workers, and no contact with the public. At step five, with the assistance of testimony from a vocational expert ("VE"), she found that considering Plaintiff's age, which at the time of the hearing was 54, her education, twelfth grade, her work experience, and her RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, thus, dictating a finding that Plaintiff was not disabled.

At the administrative hearing, the ALJ asked the VE to assume an individual of Plaintiff's age and education with no prior work experience, who could lift ten pounds frequently, twenty pounds occasionally, sit for six hours in an eight-hour workday, stand and walk for a total of six hours in an eight-hour workday, but needs to have the ability to change her position at will from sitting to standing. In addition, this hypothetical individual could occasionally bend, climb stairs, stoop, kneel, crouch, and crawl; should not be exposed to extreme cold or humidity; is limited to simple, routine, repetitive tasks, involving short, simple instructions in an environment with few workplace changes, low stress environment, limited contact with supervisors and co-workers, and no contact with the public. The VE testified that such an individual could perform jobs such as hand packer, production worker, and production inspector, and he provided estimates as to the number of such jobs in the national and local economy (R. 60-61). Based upon this response, the ALJ concluded there were a significant number of jobs that Plaintiff could perform.

The difficulty the Court has with the hypothetical posed by the ALJ to the VE is that it ignores several of Plaintiff's impairments that the ALJ found to be "severe." The ALJ's hypothetical, which was based on her RFC assessment, did not take into account any of the well-

4

documented symptoms and functional limitations caused by Plaintiff's irritable bowel syndrome or her chronic abdominal pain and diarrhea, which she determined were severe impairments. Had she included these limitations, according to the VE, there would be no jobs that this hypothetical individual could perform. In response to questions from Plaintiff's counsel, the VE testified that, if in addition to the limitations imposed by the ALJ, the hypothetical individual had to miss one day of work per month because of illness, there were no jobs that she could perform (R. 63-64). Additionally, he testified, that if that hypothetical individual had to take five to eight bathroom breaks a day, she would be precluded from performing any employment (R. 65). He estimated that an employer's tolerance "would be no more than two or three unscheduled bathroom breaks" a day (R. 66).

The medical evidence of record clearly supports the ALJ's finding that Plaintiff's irritable bowel syndrome, abdominal pain, and diarrhea were "severe" impairments,[2] a finding that neither side has challenged. Dr. Thomas McLarney, Plaintiff's treating physician for many years, diagnosed her with chronic abdominal pain. Her symptoms were consistent and chronic abdominal pain and diarrhea, which occurred daily (R. 570). He opined that these conditions would "constantly" interfere with her attention and concentration needed to perform even simple

---

[2] An impairment or combination of impairments is "not severe" if the medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; SSR 85-28; SSR 96-3p. Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The Second Circuit, along with almost every other Circuit Court, has repeatedly held that the severity regulation must be applied to do no more than screen out de minimis claims. See Dixon v, Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing cases); see also Wright v. Barnhart, No. 3:05cv1487, 2006 WL 4049579, at *12 (D. Conn. Dec. 14, 2006).

work tasks (R. 571). He further stated that Plaintiff would need to take unscheduled breaks from work every 30 minutes and would likely be absent from work more than five days per month (R. 571, 573).

Records from the East Hartford Community Health Center, where Plaintiff was treated by Dr. McLarney, among others, from 2001 to 2009, reflect a long history of these conditions. Treatment records indicate the following: An undated note lists active chronic problems, including Crohn's Disease[3] (R. 522 & 523); February 11, 2002 - diarrhea better now (R. 519); May 17, 2004 - urge incontinence (R. 499); July 13, 2004 - history of GI discomfort for 10 years; Plaintiff was recently hospitalized and diagnosed with Crohn's disease while at St. Francis Hospital; she was given IV fluids in large amounts for her diarrhea which was still ongoing, seven to eight times per day (R. 494); November 16, 2004 - urinary incontinence (R. 489); February 9, 2005 - takes Asacol;[4] Crohn's disease, left side sharp pain; always has dull pain, now

---

[3] People with Crohn's disease have ongoing (chronic) inflammation of the gastrointestinal tract. Crohn's disease may occur in any area of the digestive tract. There can be healthy patches of tissue between diseased areas. The inflammation causes the intestinal wall to become thick. There are different types of Crohn's disease, depending on the part of the gastrointestinal tract that is affected. Crohn's disease may involve the small intestine, the large intestine, the rectum, or the mouth. The main symptoms of Crohn's Disease are crampy abdominal pain, fever, fatigue, loss of appetite, pain with passing stool, persistent watery diarrhea, and unintentional weight loss.
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001295/.

[4] Asacol or Mesalamine is an anti-inflammatory used to treat ulcerative colitis (a condition in which part or all of the lining of the colon [large intestine] is swollen or worn away). Mesalamine is in a class of medications called anti-inflammatory agents. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000880/. It does not cure ulcerative colitis, but it may decrease symptoms such as stomach pain, diarrhea, and rectal bleeding caused by irritation/swelling in the colon/rectum.
http://www.webmd.com/drugs/mono-1020-MESALAMINE+DELAYED-RELEASE+EC+TABLET+-+ORAL.aspx?drugid=9006&drugname=asacol+oral.

more intense (R. 485); February 22, 2005 - urinary incontinence; "? Crohn's colitis" (R. 483); May 12, 2005 - discussed Patient's Crohn's Disease. Patient said she was stable (R. 479); June 14 and 27, 2005 - diarrhea; Asacol is not helping with Crohn's Disease (R. 476); December 23, 2005 - diarrhea for several days, and she has "Khrones ? disease;" "UC exacerbation/Crohn's exacerbation;" Plaintiff reported it was the worst pain she had ever had; advised to go to the emergency room (R. 455-46); March 20, 2006 - telephone message from Plaintiff that she has Crohn's Disease and medications are not working (R. 452); August 15, 2006 - Plaintiff left a message that she was having a lot of colon pain; she reported having been diagnosed with Crohn's disease in 2003; she was also having diarrhea (R. 447); August 17, 2006 - complained of "soiling" and history of Crohn's disease; requesting a referral to a new GI (R. 446); August 22, 2006 - Patient still having diarrhea four to five times a day, abdominal pain, history of Crohn's disease (R. 445); November 2006 - past medical history of Crohn's Disease (R. 437); January 25, 2007 - four to five years of urinary incontinence and stress urinary incontinence, "? Crohn's" (R. 433); June 15, 2007 - Crohn's (R. 427); November 26, 2007 - follow-up for Crohn's, GI upset with all foods, diarrhea 8 to 9 times a day, impression: Crohn's, "? diverticulitis" (R. 423); January 18, 2008 - anal dysfunction with incontinence (R. 421); February 18 and March 18, 2008 - Crohn's disease (R. 419, 420); August 11, 2008 - history of severe diverticulosis (R. 410); October 14, 2008 - complaints of continued abdominal pain since last visit and bouts of diarrhea (R. 404), abdominal auscultation revealed abnormalities, tenderness, assessment of "abdominal pain ? IBS [irritable bowel syndrome][5] H/O [history of] Diverticular Dz [disease] without

---

[5] Irritable bowel syndrome (IBS) is a disorder that leads to abdominal pain and cramping, changes in bowel movements, and other symptoms. Symptoms range from mild to severe. "Irritable bowel syndrome may be a lifelong condition. For some people, symptoms are disabling

evidence of diverticulitis at this time . . . Irritable bowel syndrome" (R. 405); December 5, 2008 - an assessment for abdominal pain; will be seeing GI and Colorectal surgeon (R. 403, 677); July 1, 2009 - Plaintiff referred to Dr. Brian Riley by Dr. McLarney for evaluation of urinary incontinence; Plaintiff had been experiencing nocturia X5 for the past few years (R. 669). A Problem List - Current dated January 4, 2010, includes, <u>inter</u> <u>alia,</u> diarrhea, diverticulitis of the colon (without hemorrhage), incontinence of feces, stress incontinence female, urge incontinence, and abdominal pain (R. 1085)

Records from St. Francis Hospital and Medical Center also corroborate Plaintiff's diagnosis of Crohn's Disease and recurrent problems with diarrhea and abdominal pain. On July 24, 2001, Plaintiff was seen at the Ambulatory Care Center at St. Francis for complaints of diarrhea, which she had been experiencing for ten years, cramping, and abdominal pain. The assessment was possible microcystic colitis and colon polyps (R. 622). On April 8, 2003, she was treated for increasing diarrhea (R. 358, 623). On July 2, 2004, Plaintiff was admitted to the hospital with severe, diffuse abdominal pain and cramping. She rated her pain as 10 on a 1-to-10 scale (R. 616). The records note a history of microcystic colitis. A consultative report indicates PSBO [partial small bowel obstruction] (R. 604-07). A CT Scan revealed early sigmoid diverticulitis (R. 615). Her diagnoses were Crohn's Disease of the small intestine, partial small bowel obstruction, and spastic bladder (R. 584, 608, 616). She was discharged on July 6, 2004, although she was still experiencing diarrhea and abdominal pressure (R. 595). On June 7, 2007, Plaintiff was seen at the Ambulatory Care Center for complaints of urinary incontinence for the

---

and reduce the ability to work, travel, and attend social events. Symptoms can often be improved or relieved through treatment." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001292/.

past two years (R. 624).

On August 12, 2007, Plaintiff was seen at the Emergency Room of Manchester Memorial Hospital for abdominal pain due to Crohn's Disease. Her pertinent medical history included Crohn's disease (R. 367, 998). A colonoscopy performed at Manchester Memorial Hospital on July 11, 2008, revealed moderately severe diverticulosis in the sigmoid and descending colon (R. 360). A CT Scan of the abdomen on August 1, 2008, revealed chronic diverticulosis but no evidence of diverticulitis or other active inflammatory disease (R. 555).

Office notes from Dr. A. Koudellou indicate that Plaintiff was referred to him by Dr. McLarney in early July 2008. She gave a history of diarrhea and abdominal pain since the age of 14. She had been experiencing rectal pain for about five to six years, and diarrhea as frequently as ten times per day every day (R. 630). Plaintiff was next seen by Dr. Koudellou on July 11, 2008 for chronic left-sided abdominal pain (R. 629). A colonoscopy was performed, which showed no evidence of Crohn's Disease (R. 629). Two weeks later, Plaintiff was again seen for abdominal pain (R. 629). A CT Scan of the abdomen was performed, which showed diverticulosis (R. 629). Notes from August 2008 state that Plaintiff had been treated in the ER for severe leg cramping, which the doctor noted might be due to dehydration (R. 632). In September 2008, an abdominal ultrasound was performed (R. 632). On December 10, 2008, Plaintiff was again seen for diarrhea and abdominal pain, which the doctor felt was probably due to irritable bowel syndrome (R. 632). On May 26, 2009, Plaintiff was treated for diarrhea, abdominal pain, and irritable bowel syndrome (R. 627).

Records from Hartford Hospital also document Plaintiff's repeated problems with abdominal pain and diarrhea dating back to at least 1993 (R. 878, 882, 890). Records from

9

January 2007, indicate fecal soiling and a past history of a diagnosis of Crohn's Disease, although there was no tissue diagnosis, and irritable bowel syndrome (R. 931).

Plaintiff was also treated by Dr. Rajeev Attam, a board-certified gastroenterologist, for diffuse abdominal discomfort and diarrhea in July and September 2008 (R. 934). She had been taking Asacol for the last five years. An abdominal CT scan showed colonic diverticulosis. The doctor thought her abdominal pain might be related to diverticulosis or irritable bowel syndrome. He prescribed Bentyl[6] and Prevacid and recommended a high fiber diet and antireflux diet (R. 935).

Records from John Dempsey Hospital from 2004, where Plaintiff was treated for orthopedic problems, indicate "bowel/bladder trouble" (R. 1066).

A report from Dr. Christine Barrus to Dr. Bruce Brenner dated December 8, 2008, states that Plaintiff's biggest complaint is fecal incontinence. Plaintiff reported that for the past 22 years, she had difficulty with control of her bowel movements, which had progressively worsened over the past two years (R. 1113). At the time, she was having on average 12 to 14 bowel movements a day. She described her incontinence as debilitating and reported that this was the reason she was receiving state assistance. Dr Barrus concluded that Plaintiff's primary problem was her diarrhea, which could improve with medical management alone. She liberalized her use of Imodium and told her to start on a fiber supplement (R. 1114).

Lastly, Plaintiff prepared a "voiding diary" for January 21 and 22, 2010, in which she

---

[6] Bentyl or Dicyclomine is used to treat the symptoms of irritable bowel syndrome. Dicyclomine is in a class of medications called anticholinergics. It relieves muscle spasms in the gastrointestinal tract by blocking the activity of a certain natural substance in the body. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000810/.

recorded the times that she had to use the bathroom. On January 21, she listed 15 times including diarrhea on two occasions. On January 22, she listed 17 times, with severe diarrhea twice and diarrhea, which is not indicated as severe, on two other occasions (R. 1111-12). At the hearing before the ALJ, she testified that she had to leave her last employment because she was getting reprimanded constantly for using the bathroom frequently. She had constant incontinence and stomach pain (R. 36). She testified that she was not able to work because she "can't stay out of the bathroom. [Her] body is just, it's breaking down. The Crohn's is getting worse - [she has] pain in [her] lower colon all the time" (R. 36-37). She said that the intensity of the pain in her colon varies in intensity. On a good day, the pain is light. When it is severe, she is on the couch or in bed all day (R. 38). At the time of the hearing, she was taking Bentyl, Prevacid, and Imodium (R. 39). She testified that everything she eats makes her sick. She has stomach pain, severe cramping, and diarrhea (R. 40). This happens everyday, sometimes up to fifteen times a day. On average, she estimated it occurred ten times a day (R. 41). James Galvin, Plaintiff's companion, also testified that Plaintiff was constantly going to the restroom and was constantly in pain (R. 56).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. She determined that, in terms of Plaintiff's abdominal pain, her gastroenterologist found diverticulosis and irritable bowel syndrome "neither of which would cause disabling symptoms" (R. 20). The ALJ also cited to Dr. Koudellou's report that Plaintiff's colonoscopy revealed no evidence of Crohn's Disease to refute Plaintiff's claim that she had Crohn's. She stated that Plaintiff had been advised merely to avoid food that irritated her digestive system, such as vegetables and dairy. The ALJ found

11

Plaintiff's complaints of diarrhea to be consistent and noted that she had been to three specialists, but that she did not follow through with their recommendations. The ALJ stated that all three thought her symptoms could be managed conservatively, and her main problem was diarrhea, not incontinence (R. 20-21).

The Court finds that the ALJ's assessment of Plaintiff's credibility, at least insofar as it related to her complaints of abdominal pain and diarrhea, is not supported by substantial evidence in the record. The hospital records from St. Francis Hospital do, in fact, contain a diagnosis of Crohn's Disease, just as Plaintiff related to her subsequent treating doctors (R. 494 & 584). Indeed, her treating doctor at the time, Dr. McLarney wrote, just several days after her discharge, Plaintiff "was recently hospitalized and dx [diagnosed] w/ [with] Crohn's Dx while at St. Francis Hospital. She was given large amounts of fluid for her diarrhea which continues until today ~ 7-8 X/day" (R. 494). Additionally, while Plaintiff's treating doctors did recommend that she eat a high fiber diet, this was not the only recommended treatment. The medical records indicate that Plaintiff was taking Bentyl, prescription-strength Imodium to control her diarrhea, and Asacol. Dr. Attam, whose report is cited by the ALJ, prescribed the Bentyl, along with a high fiber diet (R. 935). Dr. Barrus, whose report is also cited by the ALJ, also recommended a fiber supplement, but she also "liberalized her use of Imodium" and reassured her that the majority of the time, her diarrhea could be improved with "<u>medical</u> management" (R. 1114) (emphasis added). Moreover, it is not clear upon what evidence the ALJ relied to reach her conclusion that Plaintiff did not follow through with their recommendations. Last, the ALJ states in conclusory fashion that neither irritable bowel syndrome nor diverticulosis can cause disabling symptoms. That statement does not appear to be accurate. <u>See</u> Note 5, <u>supra</u>. Further,

even if the symptoms of these conditions were not in and of themselves "disabling," these conditions certainly caused functional limitations that should have been addressed.

Given Plaintiff's long history of diarrhea and abdominal pain, which is well-documented in the medical records spanning more than a ten-year period, the Court finds that it was error for the ALJ not to include the limitations caused by these "severe" impairments in her RFC assessment and in her hypothetical questions to the VE. See SSR 97-7p: Policy Interpretation Ruling, Titles II and XVI: Evaluation of Symptoms In Disability Claims: Assessing the Credibility of an Individual's Statements. In fact, despite the ALJ's findings that these were "severe" impairments, that Plaintiff's complaints of diarrhea were "consistent," and that this was her "main problem," the ALJ never included the limiting effects of Plaintiff's need to use the bathroom frequently in her RFC assessment or in her questions to the VE (R. 21). Instead, she ignored these functional limitations entirely. See Cobb v. Astrue, 613 F. Supp. 2d 253, 258 (D. Conn. 2009) (reversing and remanding a decision of the Commissioner where the ALJ failed to take into account the claimant's excessive urination as a result of his high blood pressure medication in his RFC assessment. In that case, the claimant's increased urination was mentioned only five times in disability records and never mentioned in the medical records). To paraphrase this Court's decision in Cobb, supra, despite this seemingly critical finding as to how Plaintiff's need for excessive bathroom breaks might affect her ability for substantial gainful activity, there is no discussion of this issue. See Id. at 259. This is so despite the fact that the VE's responses indicated that such a limitation would affect Plaintiff's ability to perform any work that exists in significant numbers in the national economy. See Id.

"Courts have repeatedly held that questions to a vocational expert must precisely set out

the claimant's individual physical and mental impairments." Carolyn A. Kubitschek, <u>Social Security Disability: Law and Procedure in Federal Court</u> § 3:101 (2008 ed.). "If the ALJ's question to a vocational expert fails to include with precision all of the impairments from which a claimant suffers, then the expert's testimony cannot constitute substantial evidence upon which to base a conclusion that the claimant is not entitled to benefits." <u>Id.</u> (internal quotation marks omitted). Given the copious medical records documenting Plaintiff's on-going complaints of diarrhea and abdominal pain, the Court finds that it was error for the ALJ not to include the limiting effects of these severe impairments in her RFC assessment and questions to the VE. Significantly, the Court did not find any suggestion in the record that Plaintiff was malingering or was not a reliable historian. To the contrary, on at least one occasion, she was described as a "reliable historian" (R. 437).

Accordingly, the Court recommends that this matter be reversed and remanded. Because the VE has already testified that there would be no jobs in the national economy for a claimant with Plaintiff's RFC and who had to use the bathroom five to eight times a day, the Court finds that there is no need for further consideration of the evidence or for an additional hearing. Instead, this matter should be remanded solely for a calculation of benefits for the period at issue, December 8, 2007, to March 24, 2010.

## Conclusion

Therefore, the Court recommends that Plaintiff's Motion for Judgment [Doc. # 17] be granted, and that Defendant's Motion to Affirm [doc. # 25] be denied. If the District Judge approves and adopts this Recommended Ruling, the Clerk should then enter Judgment in favor of Plaintiff under sentence four of 42 U.S.C. § 405(g) and remand this matter solely for a

calculation of benefits for the period December 8, 2007, to March 24, 2010.

This is a Recommended Ruling. <u>See</u> Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. <u>See</u> Fed. R. Civ. P. 72(b)(2) and 6(d).

SO ORDERED, this <u> 2nd </u> day of September, 2011, at Bridgeport, Connecticut.


       <u>/s/ *William I. Garfinkel*</u>
       WILLIAM I. GARFINKEL
       United States Magistrate Judge